UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHAEL PELLETIER,

        Plaintiff,     1:04-CV-0650
                      (NAM/RFT)
    v.

CSX TRANSPORATION, INC.,

        Defendant.
_____

**APPEARANCES**                          **OF COUNSEL:**

KANTOR & GODWIN, P.L.L.C.                Steven L. Kantor, Esq.
5800 Main Street
Williamsville, New York 14221
*Attorney for Plaintiff*

HODGSON RUSS, L.L.P.                     Noreen DeWire Grimmick, Esq.
677 Broadway, Suite 301                  Lawrence R. Bailey, Jr.
Albany, New York 12207
*Attorneys for Defendant*

**Norman A. Mordue, Chief U.S. District Judge**:

## MEMORANDUM-DECISION AND ORDER

### I.    INTRODUCTION

Plaintiff was employed by the defendant railroad company ("CSX") when on May 2, 2003, he alleges he was injured while attempting to couple an engine and boxcar. Plaintiff sued pursuant to the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq*., and the federal Safety Appliance Act ("SAA"), 49 U.S.C. § 20302(a)(1)(A). Defendant has moved for an order dismissing the complaint and/or granting summary judgment on plaintiff's SSA claims on the ground that as a matter of law, plaintiff's alleged injury in this case was not contemplated by the SAA. Plaintiff opposes defendant's motion.

**II.     FACTUAL BACKGROUND**

The relevant facts in this case are briefly summarized as follows:  Plaintiff was employed by CSX as conductor at the company's yard in Selkirk, New York.  On May 2, 3003, at approximately 11:50 p.m., plaintiff attempted to couple a locomotive engine and boxcar.  In furtherance of this attempt, plaintiff opened the knuckles on both the engine and boxcar.  When the cars did not couple on impact, the knuckles on both cars closed.  Plaintiff does not know why the cars did not couple on impact.  He testified at his deposition, "They just didn't - the couple didn't mate, that's all."  Plaintiff then walked toward the engine which was stationary on the outside of the railroad tracks.  Plaintiff's intent in approaching the cars was to couple the cars manually by operating the cutting lever on the engine.  As he approached the engine, plaintiff lost his balance on allegedly uneven and loose ballast and fell between the cars.  When plaintiff fell, his hand landed on the knuckle of the engine while the cars that had been shoved during the original attempt to couple recoiled and moved into the knuckle of the engine.  This impact caused a crushing injury to the thumb of plaintiff's right hand.

In a locomotive work report dated April 28, 2003, just days prior to the accident, an employee of CSX had noted that the rear knuckle on the engine in question herein, #8871, would not open.  On May 1, 2003, the day before plaintiff's accident, the rear knuckle of engine #8871 was inspected and noted to be "OK."  Following the accident, CSX machinist, William Woodcock, was directed to perform a brake test on the engine which was satisfactory.  It was the first and only time Woodcock was asked to perform testing on an engine following an accident.  Woodcock did not inspect the knuckles, couplers or drawbars on the engine because he was not asked to do so and it was not his job.  The coupler on the boxcar was inspected after the accident

by CSX employee Bernie MCCall who found no defects.

**III.    DISCUSSION**

A.    Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258 (1986). Irrelevant or unnecessary facts do not preclude summary judgment, even when they are in dispute. *See id.* The moving party bears the initial burden of establishing that there is no genuine issue of material fact to be decided. *See Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). With respect to any issue on which the moving party does not bear the burden of proof, it may meet its burden on summary judgment by showing that there is an absence of evidence to support the nonmoving party's case. *See id.* at 325.

Once the movant meets this initial burden, the nonmoving party must demonstrate that there is a genuine unresolved issue for trial. *See* Fed. R. Civ. P. 56(e). A trial court must resolve all ambiguities and draw all inferences in favor of that party against whom summary judgment is sought, *see Ramseur v. Chase Manhattan Bank*, 865 F.2d Cir. 460, 465 (2d Cir. Cir. 1989); *Eastway Constr. Corp. v. City of New York*, 762 F.2d Cir. 243, 249 (2d Cir. Cir. 1985). It is with these considerations in mind that the Court addresses the parties' motions for summary judgment.

B.    Safety Appliance Act

The history of the SAA was explained by the Supreme Court in the case of *Norfolk and Western Ry. Co. v. Hiles*, 516 U.S. 400, 407 (1996):

> Railroad cars in a train are connected by couplers located at both ends of each car. A coupler consists of a knuckle joined to the end of a drawbar, which itself is fastened to a housing mechanism on the car. A knuckle is a clamp that interlocks with its mate, just as two cupped hands-placed palms together with the fingertips pointing in opposite directions interlock when the fingers are curled. When cars come together, the open knuckle on one car engages a closed knuckle on the other car, automatically coupling the cars. The drawbar extends the knuckle out from the end of the car and is designed to pivot in its housing, allowing the knuckled end some lateral play to prevent moving cars from derailing on a curved track. As a consequence of this lateral movement, drawbars may remain off center when cars are uncoupled. This misalignment, if not corrected, may prevent cars from coupling by allowing the knuckles to pass by each other. To ensure proper coupling, railroad employees must realign drawbars manually.
>
> . . .
>
> For most of the 19th century, the link-and-pin coupler was the standard coupler used to hook together freight cars. It consisted of a tubelike body that received an oblong link. During coupling, a railworker had to stand between the cars as they came together and guide the link into the coupler pocket. Once the cars were joined, the employee inserted a pin into a hole a few inches from the end of the tube to hold the link in place. The link-and-pin coupler, though widely used, ultimately proved unsatisfactory because (i) it made a loose connection between the cars with too much give and play; (ii) there was no standard design and train crews often spent hours trying to match pins and links while coupling cars; (iii) links and pins were frequently lost, resulting in substantial replacement costs; and (iv) crew members had to go between moving cars during coupling and were frequently injured and sometimes killed.

516 U.S. at 401-403 (citing R. REINHARDT, WORKIN' ON THE RAILROAD 274 (1970); J. WHITE, AMERICAN RAILROAD FREIGHT CAR 490, 490-97 (1993)).

As originally passed, § 2 of the SAA provided:

> [I]t shall be unlawful for any ... common carrier to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled[,] without the necessity of men going between the ends of the cars.

*Norfolk,* 516 U.S. at 407 (citing Act of Mar. 2, 1893, 27 Stat. 531, 45 U.S.C. § 2 (1988 ed.),

4

recodified, as amended, 49 U.S.C. § 20302(a) (1994 ed.)). The text of § 2 requires that rail cars be equipped with automatic couplers and that all couplers be sufficiently compatible so that they will couple on impact. *See id.* at 407-08 (citing *Johnson v. Southern Pacific Co.*, 196 U.S. 1, 16-17 (1904). The railroad is liable for an employee's injury or death caused by a violation of the SAA. *See id.* at 408 (citing *St. Louis, I.M. & S.R. Co. v. Taylor*, 210 U.S. 281, 295 (1908) ("If the railroad ... use[s] cars which do not comply with the standard, it violates the plain prohibitions of the law, and there arises from that violation the liability to make compensation to one who is injured by it")). As noted by the Supreme Court in *Norfolk:*

> Early SAA cases involved injuries that occurred when an employee was forced to go between the cars during coupling operations. Our later cases extended the reach of SAA liability beyond injuries occurring between cars during coupling to other injuries caused by the failure of cars to automatically couple. **Liability in each of these cases was predicated on the failure of coupling equipment to perform as required by the SAA, and we held that the SAA creates an absolute duty requiring not only that automatic couplers be present, but also that they actually perform.**

516 U.S. at 408 (emphasis added) (internal citations omitted).

In the present case, it is undisputed that plaintiff was not engaged in the actual act of attempting to couple the engine and boxcar at the moment he was injured. Indeed, plaintiff admits that he was walking toward the engine at the time the accident occurred and slipped on ballast. However, plaintiff contends that the failure of engine # 8871 and the boxcar to couple on impact is an automatic violation of the SAA and that the failure of the cars to couple was at least partially to blame for causing the accident.

Defendant contends that the Supreme Court's decision in *Norfolk* made clear that "failure to couple is not a violation of the [SAA.]" In support of its motion, defendant argues that the accident in question did not occur in the course of plaintiff's attempt to couple, but rather, when

5

he lost his footing while approaching a locomotive with the intention of operating a cutting lever which plaintiff concedes could have been operated without going in between the ends of the engine and boxcar. In support of this claim, defendant cites *Norfolk* wherein the plaintiff was forced to go in between the ends of railroad cars to manually adjust a misaligned drawbar after the cars failed to couple. In *Norfolk*, the court rejected plaintiff's claim that the SAA was violated when railroad cars failed to couple due to the misalignment of the drawbar. *See Norfolk*, *supra* 516 U.S. at 409. The Supreme Court opined "[o]f course [imposition of failure-to-perform liability] assumes that the coupler was placed in a position to operate on impact." *Id.* Thus, if the failure of cars to couple was because one car's coupler was not open or because the drawbar was not aligned properly, "the railroad had a good defense." *Id.* (citing *Affolder v. New York, C. & St. L.R. Co.*, 339 U.S. 96, 97 (1950) (failure to couple does not create automatic liability under SAA if coupler not properly set)). Because the attempt to couple engine # 8871 with the boxcar failed before his accident and the accident was not a consequence of an attempt to couple, defendant asserts plaintiff's claim under the SAA fails as a matter of law. The Court disagrees.

In a case such as the present one where coupling had been attempted, a plaintiff proves his claim under § 2 of the SAA by demonstrating: (1) that the train couplers failed to couple automatically or failed to remain coupled until purposely released, and (2) that this failure caused, in whole or in part, his injury. *See Kavorkian v. CSX Transp., Inc.*, 117 F.3d 953, 958 (6th Cir. 1997). However, "[a] defendant may rebut the plaintiff's case by proving both: (1) that the equipment was not properly set, e.g., that the drawbars were not properly aligned or that one of the knuckles was not open, and (2) that a defect in the equipment did not cause the equipment to be improperly set, i.e., the equipment became improperly set "during the ordinary course of railroad operations." *Id.* (citing *Norfolk,* 516 U.S. at 409-10).

Defendant's reliance on *Norfolk* is misplaced because there, it was undisputed that a misaligned drawbar was the cause of the failure to couple. And in *Affolder*, the Supreme Court noted that if it were shown that a coupler was not properly set, absolute liability could not be imposed since the "failure [would not be] of the device." 339 U.S. at 101. In this case, defendant has not submitted any evidence of the reason that the cars failed to couple on impact. Indeed, the record is devoid of an explanation for this failure. According to plaintiff, both knuckles of the couplers were open, but the cars did not couple on impact and he does not know why. While defendant asserts that the cars were inspected both before and after the accident and "no defects" were found,[1] it is well-settled that "failure to perform as required by the SAA is itself an actionable wrong dependent on neither negligence nor proof of a defect." *Norfolk, supra*, 516 U.S. at 409. Thus, the presence or absence of a defect in the coupling mechanism is not relevant to an inquiry of "failure-to-perform liability." *Id.* Nor is it relevant that plaintiff's fall occurred when he was approaching the locomotive after a failure to couple. Liability of a railroad under the SAA for injuries inflicted as a result of the Act's violation flows from the unlawful use of prohibited defective equipment "not from the position the employee may be in, or the work which he may be doing at the moment when he is injured." *Coray v. Southern Pacific Co.*, 335 U.S. 520, 523 (1949) (citations omitted). Because it is undisputed that the cars failed to couple on impact and there is no evidence in the record to suggest that the failure was "not that of the device," defendant has failed to carry its burden on this motion.

---

[1] The Court notes that the testimony of Mr. Woodcock and Mr. McCall actually shows that only the involved boxcar and the brakes of engine #8871 were inspected after the accident. The inspection report from April 28, 2003, indicated that the rear coupler would not open while the inspection report from the day before the accident indicated that the rear coupler on the engine was "OK." These documents are not in admissible form nor was they submitted by persons with personal knowledge of them.

**IV.     CONCLUSION**

For the foregoing reasons it is hereby

ORDERED that the motion for summary judgment filed by defendant CSX Transportation, Inc. is DENIED.

IT IS SO ORDERED.

Date: September 27, 2007

_____
Norman A. Mordue
Chief United States District Court Judge